# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: Seroquel XR (Extended Release Quetiapine Fumarate) Litigation<br><br>All End-Payor Class Actions | No. 1:20-cv-01076-CFC |

## END-PAYOR CLASS PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12 (B)(1) & 12(B)(6)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. ii

I.   INTRODUCTION ........................................................................1

II.  EPPS' CLAIMS ARE TIMELY................................................2

III. EPPS ALLEGE THE TYPE OF INJURY THE ANTITRUST LAWS WERE INTENDED TO PREVENT ...................................7

IV.  EPPS HAVE ARTICLE III STANDING.....................................9

V.   EPPS' STATE ANTITRUST CLAIMS ARE WELL-PLED ......................12

VI.  EPPS' CONSUMER PROTECTION CLAIMS ARE PERMISSIBLE........15

    A.   EPPs' CONSUMER PROTECTION CLAIMS SATISFY RULE 8(A) .............15

    B.   EPPs' CONSUMER PROTECTION CLAIMS ARE VALID ...........................16

VII. EPPS' UNJUST ENRICHMENT CLAIMS ARE PROPERLY PLEAD.........................................................................18

    A.   ILLINOIS BRICK DOES NOT PRECLUDE PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT................................................19

    B.   EPPs' UNJUST ENRICHMENT CLAIMS ARE PROPERLY PLED IN THE ALTERNATIVE ..................................................20

    C.   DEFENDANTS' "DIRECT BENEFIT" AND "LACHES" ARGUMENTS FAIL...............................................................20

VIII. CONCLUSION...........................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Aggrenox Antitrust Litig.*,
  94 F. Supp. 3d 244 (D. Conn. 2015)....................................................................6

*In re Animation Workers Antitrust Litig.*,
  87 F. Supp. 3d 1195 (N.D. Cal. 2015)................................................................3

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018)..............................................................................11

*Baker v. Family Credit Counseling Corp.*,
  440 F. Supp. 2d 392 (E.D. Pa. 2006)...............................................................20

*Bolinger v. First Multiple Listing Serv.*,
  838 F. Supp. 2d 1340 (N.D. Ga. 2012)............................................................20

*In re Broiler Chicken*,
  No. 16 C 8637, 2017 WL 5574376 (N.D. Ill. Nov. 20, 2017) ..............11, 12, 13

*Brunswick Corp. v. Pueblo Bowl-O-Matic, Inc.*,
  429 U.S. 477 (1977)............................................................................................7

*California v. ARC America Corp.*,
  490 U.S. 93 (1989)..............................................................................................1

*In re Chocolate Confectionary Antitrust Litig.*,
  602 F. Supp. 2d 538 (M.D. Pa. 2009)..............................................................12

*Compaq Computer Corp. v. Inacom Corp.*,
  No. 01-108, 2001 WL 789408 (D. Del. July 12, 2001).......................................4

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
  903 F. Supp. 2d 198 (S.D.N.Y. 2012) ..............................................................11

*In re Effexor Antitrust Litig.*,
  337 F. Supp. 3d 435 (D.N.J. 2018)........................................................3, 17, 18

*In re Flonase*,
  692 F. Supp. 2d 524 (E.D. Pa 2010)..........................................................14, 18

*In re Generic Pricing Antitrust Litig.*,
  368 F. Supp. 3d 814 (E.D. Pa. 2017) ............................................................*passim*

*Heraeus Med. GmbH v. Esschem, Inc.*,
  927 F.3d 727 (3d Cir. 2019) .............................................................................5

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977)..........................................................................1, 2, 12, 19

*In re Intel Corp Microprocessor Antitrust Litigation*,
  496 F. Supp. 2d 404 (D. Del. 2007)..................................................................17

*In re K-Dur Antitrust Litig.*,
  338 F. Supp. 2d 517 (D.N.J. 2004).....................................................3, 4, 19, 20

*King Drug Co. of Florence v. Cephalon, Inc.*,
  702 F. Supp. 2d 514 (E.D. Pa. 2010).................................................................15

*Klehr v. A.O. Smith Corp.*,
  521 U.S. 179 (1997).......................................................................................3, 4

*In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*,
  172 F. Supp. 3d 724, 741-52 (D.N.J. 2016) .......................................................6

*Landsman v. Maryland Home Improvement Com'n*,
  839 A.2d 743 (Md. Ct. Spec. App. 2003).........................................................13

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
  897 F.3d 88 (2d Cir. 2018) ..............................................................................10

*Lewis v. Casey*,
  518 U.S. 343 (1996) (Souter, J., concurring) ...................................................10

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
  No. 16-MD-2687, 2017 WL 3131977 (D.N.J. July 20, 2017) .........11, 12, 13, 14

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  295 F. Supp. 2d 30 (D.D.C 2003).............................................................14, 19

*Mack v. Bristol-Myers Squibb Co.*,
  673 So.2d 100 (Fla. 2d DCA 1996)..................................................................12

*McKinnon v. Honeywell*,
 977 A.2d 420 (Me. 2009) ....................................................................5, 6

*Meijer v. 3M*,
 No. 04-5871, 2005 WL 1660188 (E.D. Pa. July 13, 2005) ...................6

*In re Mercedes-Benz Emissions Litig.*,
 No. 16-881, 2019 WL 413541 (D.N.J. Feb. 1, 2019)...........................5

*Miller v. Samsung Elecs.*,
 No. 14-4076, 2015 WL 3965608 (D.N.J. June 29, 2015) ............................11, 12

*Morrison v. YTD International, Inc.*,
 649 F.3d 533 (7th Cir. 2011) ...............................................................11

*Needham v. Cruver*,
 19 Del............................................................................................21

*In re Niaspan Antitrust Litig.*,
 42 F. Supp. 3d 735 (E.D. Pa. 2014).....................................................3, 4, 5, 11

*Perkins v. Standard Oil Co. of California*,
 395 U.S. 642 (1969)................................................................................1

*In re Pharm. Indus. Average Wholesale Price Litig.*,
 491 F. Supp. 2d 20 (D. Mass. 2007)...................................................17

*In re Processed Egg Prods. Antitrust Litig.*,
 851 F. Supp. 2d 867 (E.D. Pa. 2012)..................................................12

*In re Prudential Ins. Co Am. Sales Practice Litig.*,
 148 F.3d 283 (3d Cir. 1998) ..................................................9, 10, 11

*In re Remicade Antitrust Litig.*,
 345 F. Supp. 3d 566 (E.D. Pa. 2018).........................................................11, 12

*Robinson v. Johnson*,
 313 F.3d 128 (3d Cir. 2002) ...........................................................2, 3

*Rochester Drug Co-op., Inc. v. Braintree Labs.*,
 712 F. Supp. 2d 308 (D. Del. 2010)....................................................7

*Schmidt v. Skolas*,
   770 F.3d 241 (3d Cir. 2014) ...............................................................4

*Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*,
   113 F.3d 405 (3d Cir. 1997) ...............................................................7

*Sergeants Benevolent Association Health & Welfare Fund v. Actavis*,
   No. 15 Civ. 6549, 2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018) ...............15, 16

*Seye v. Cmty. Yellow Cab*,
   No. 10-234, 2013 WL 1332430 (E.D. Ky. Feb. 25, 2013)................................20

*Shady Grove Orthopedic v. Allstate Ins.*,
   559 U.S. 393 (2010).........................................................................13

*Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp.*,
   221 F. Supp. 3d 227 (D.R.I. 2016) ....................................................11

*In re Suboxone Antitrust Litigation*,
   64 F. Supp. 3d 665 (E.D. Pa. 2014)......................................12, 17, 18

*In re Thalomid & Revlimid Antitrust Litig.*,
   No. 14-6997, 2015 WL 9589217 (D.N.J. Oct. 29, 2015).....................11, 12, 19

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*,
   140 F.3d 478 (3d Cir. 1998) ...............................................................8

*In re Warfarin Sodium Antitrust Litig.*,
   214 F.3d 395 (3d Cir. 2000) ...............................................................7

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143............................................................11, 12, 18, 19

## Statutes

Florida Antitrust Act .................................................................12

Florida Deceptive and Unfair Trade Practices Act....................................12

FTC Act..................................................................................14

Ill. Comp. Stat. § 10/7(2) ...........................................................13

Illinois Antitrust Act ..................................................................................16

Mass. Gen. Laws ch. 93A ..........................................................................14

Massachusetts Consumer Protection Act ..................................................17

Md. Code Com. Law § 11-209(b)(1) .........................................................13

Md. Code Com. Law § 11-209(b)(2) .........................................................13

Nev. Rev. Stat. § 41.600(1) .......................................................................18

Nev. Rev. Stat. § 598.0977 ........................................................................18

NY Consumer Protection Laws .................................................................17

Sherman Act ...............................................................................................6

Utah Antitrust Act ......................................................................................14

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..............................................................................2

Illinois *Consumer Fraud and Deceptive Business Practices Act* ............16

Rule 8(a) .....................................................................................................15

Rule 23 .............................................................................................9, 10, 12, 13

Rule 23(b)(3) ..............................................................................................10

## I.      INTRODUCTION

The Court should deny Defendants' motion to dismiss the End-Payor Plaintiffs' ("EPPs" or "Plaintiffs") Second Consolidated Amended Complaint ("Complaint" or "SCAC"). EPPs are union health and welfare funds and a municipality who assert claims for damages under state-law antitrust, consumer protection and unjust enrichment statutes. When drug manufacturers collude to delay price competition, individual consumers and end payors, such as Plaintiffs, who pay for prescription drugs, bear the brunt of the anticompetitive scheme. The law has always recognized this reality. Indeed, before 1977, "indirect purchasers" could recover damages under federal antitrust law.  *Perkins v. Standard Oil Co. of California*, 395 U.S. 642, 648 (1969).  In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court changed that rule, limiting federal damages recovery to "direct" purchasers over a strenuous dissent, which recognized that "the brunt of antitrust injuries is borne by indirect purchasers."  *Id.* at 749.

Following *Illinois Brick*, most state legislatures enacted "repealer" legislation[1] for the explicit purpose of reinstituting compensation for end payors harmed by antitrust violations and assuring that *Illinois Brick's* damages limitations are not applied under their state laws.

In *California v. ARC America Corp.*, 490 U.S. 93 (1989), the Supreme Court

---

[1] Other states did this by judicial interpretation.

held that courts must apply repealer state laws consistently with the intentions of state legislatures and courts and must not apply *Illinois Brick* principles to curtail the repealer states' law and policy.[2] Since *ARC America*, defendants have devised creative strategies to read *Illinois Brick's* limitations back into repealer state antitrust law. Defendants here rest their motion to dismiss on a page from that playbook, arguing that EPPs lack standing to pursue their claims. That ploy cannot succeed – EPPs' standing is solid. Other courts have routinely rejected the very arguments that Defendants try to resurrect here. Defendants' motion should be denied.[3]

## II.    EPPS' CLAIMS ARE TIMELY

Because a statute of limitations defense is an affirmative defense, a complaint cannot be dismissed under Fed. R. Civ. P. 12(b)(6) unless plaintiffs' claims are time barred on "the face of the complaint." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). Defendants cannot meet that burden here.

---

[2] Although state repealer laws protect "indirect" purchasers, they are not secondary or derivative to federal law, or "direct" purchasers, in the way that some mistakenly suppose based on "direct/indirect" terminology. As *ARC America* made clear, repealer state laws are separately enforceable and diverge from federal law only because they protect End Payors rather than direct purchasers. Defendants refer to Plaintiffs as indirect purchasers. Plaintiffs believe the more accurate appellation to be "End-Payor Plaintiffs" and refer to themselves as such.

[3] EPPs incorporate their prior opposition to Defendants' Motion to Dismiss and the Direct Purchaser Plaintiffs' Oppositions to Defendants' prior and current Motions to Dismiss regarding statute of limitations and antitrust injury. (*See* D.I. 73, 149, 116 in No. 20-01090).

Defendants argue that EPPs' claims are untimely because "EPPs Knew of Their Seroquel XR Claims Years Ago." D.I. 140 ("MTD"), MTD at 4-5. First, this argument fails as it rests on matters outside the Complaint. *Robinson*, 313 F.3d at 135. Second, Defendants cite no authority in support of this proposition because it is wrong. In determining when an antitrust cause of action accrues, plaintiff's knowledge is irrelevant. *See*, *e.g.*, *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1209-10 (N.D. Cal. 2015) (holding that claims accrue at time of injury regardless of plaintiff's knowledge). The Supreme Court explained this well-established rule as follows:

> Antitrust law provides that, in the case of a "continuing violations," . . . "each overt act that is part of the violation and that injures the plaintiff, e.g., each sale to the plaintiff, "starts the statutory period running again, ***regardless of the plaintiff's knowledge of the alleged illegality at much earlier times*****."**

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (emphasis added).

Within the "pay-for-delay" context, it is settled that end-payors relying on state antitrust, consumer protection, and unjust enrichment laws may avail themselves of the continuing violation doctrine to bring claims for purchases made during the applicable limitations periods even when some of the anticompetitive acts occurred outside the limitations period. *See, e.g.*, *In re Effexor Antitrust Litig.*, 337 F. Supp. 3d 435, 452 -53 (D.N.J. 2018); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 747 (E.D. Pa. 2014); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 551

(D.N.J. 2004); 6 Louis Altman and Malla Pollack, on Unfair Comp., Trademarks & Monopolies § 23:32 (4th ed. 2019) ("Every court to have considered this issue in the pharmaceutical patent settlement, pay-for-delay context has held that a new cause of action accrues to purchasers upon each overpriced sale of the drug.").

Defendants next contend that EPPs' claims are untimely because "Continuing Purchases of Seroquel XR Cannot Reset the Statutes of Limitations." MTD at 5-7. As the Supreme Court and cases above make clear, a new cause of action *does* accrue with each overcharged purchase. *Klehr*, 521 U.S. at 189.

Defendants' argument that the SCAC does not plead sufficient facts to establish a "continuing course of conduct" or meet various states' interpretation of the continuing violations doctrine, is misplaced. MTD at 6. Complaints plead facts, not law. *Compaq Computer Corp. v. Inacom Corp.*, 2001 WL 789408, at *3 (D. Del. July 12, 2001). A complaint is not required to contain facts rebutting an affirmative statute of limitations defense. *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014). The SCAC alleges purchases within the applicable statute of limitations by EPPs at supracompetitive prices caused by Defendants' anticompetitive conduct. SCAC (D.I. 138) ¶¶205, 209-14. These allegations alone are sufficient to bring EPPs' claims within the applicable statutes of limitations.

Defendants' attempts to highlight purported differences in how states address continuing violations improperly conflate two related but distinct doctrines. The

4

term "continuing violation" is used to describe both: (a) the "continuing violation doctrine"—which does not begin the limitations period until the defendant's last act of misconduct, permitting recovery for all prior injuries; and (b) the "separate accrual rule"—where each violation starts the statutory period anew, but does not permit recovery for injuries resulting from violations occurring pre-limitations period. *Heraeus Med. GmbH v. Esschem, Inc.*, 927 F.3d 727, 740 (3d Cir. 2019). The SCAC uses the term exclusively in the second context (*i.e.*, the separate accrual rule), as EPPs only seek to "recover for damages that they suffered during any applicable limitations period." SCAC ¶221.

Defendants' confusion—and resulting flawed analysis—is apparent from the cases they rely on.[4] They cite *McKinnon v. Honeywell*, 977 A.2d 420, 425 (Me. 2009) to argue that a number of states "'never adopted the continuing violations doctrine as a means of tolling the statute of limitations.'" MTD at 6. *McKinnon* actually held that while the continuing violations doctrine could not revive old claims, claims relating to overcharged purchases during the limitations period were

---

[4] The Court should not permit Defendants to bypass word limitations with an appendix of cases or to cure this deficiency through their reply. *In re Mercedes-Benz Emissions Litig.*, 2019 WL 413541, at *23 (D.N.J. Feb. 1, 2019) (refusing to address state law arguments improperly raised in appendix rather than in briefing itself); *Niaspan*, 42 F. Supp. 3d 747 n.7 (addressing timeliness of EPPs' state-law claims "would be premature" where defendants attached a chart with limitations periods but did not brief).

timely even though the misconduct occurred well outside the limitations period. *McKinnon*, 977 A.2d at 424.[5]

Similarly, Defendants argue that some states "approach the issue as do the federal courts"— "mere purchases—whether indirect or direct—do not reset the statutes of limitations."  MTD at 6-7.  As discussed above, federal law permits antitrust plaintiffs to bring claims for injuries within the limitations period caused by anticompetitive acts occurring outside of the limitations period.  *Meijer v. 3M*, 2005 WL 1660188, at *4 (E.D. Pa. July 13, 2005).[6]

Even if a new antitrust claim did not accrue with each overcharged purchase causing EPPs injury (which it does under well-established Supreme Court precedent), the very earliest EPPs were injured—and thus the earliest their claims first accrued—would be the date upon which generic entry could have occurred but did not due to Defendants' unlawful conduct, (SCAC ¶¶202-214), which is a question of fact that cannot be resolved at this stage.

---

[5] Defendants have not cited a single state court case where a court interpreting its antitrust statute held that the separate accrual rule is inapplicable.  Rather, states harmonize with federal antitrust law.  *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 244, 248 (D. Conn. 2015).  Indeed, Defendants' concede that "[s]tate antitrust law is 'consistently interpreted in parallel' or "identically, with the Sherman Act. . ." MTD at 3.

[6] *Lamictal* is inopposite. That court only considered the "continuing violation doctrine" (*i.e.*, whether to toll the limitations period) and not the separate accrual rule.  *See In re: Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 741-52 (D.N.J. 2016).

## III.   EPPS ALLEGE THE TYPE OF INJURY THE ANTITRUST LAWS WERE INTENDED TO PREVENT

The SCAC describes how EPPs were injured by Defendants' anticompetitive agreements—by purchasing drugs at supracompetitive prices.  SCAC ¶¶202-207, 209-214.  Such injuries are precisely "the type the antitrust laws were intended to prevent" and flow directly "from that which makes [D]efendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Matic, Inc*., 429 U.S. 477, 489 (1977); *see also Rochester Drug Co-op., Inc. v. Braintree Labs.*, 712 F. Supp. 2d 308, 318 (D. Del. 2010).

The Third Circuit has explained, "[i]t is difficult to imagine a more formidable demonstration of antitrust injury." *In re Warfarin Sodium Antitrust Litig*., 214 F.3d 395, 401 (3d Cir. 2000).  Nothing more is required at this stage.  *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co*., 113 F.3d 405, 417 (3d Cir. 1997) ("existence of antitrust injury is not typically resolved through motions to dismiss").

Defendants nonetheless argue that EPPs fail to plead antitrust injury because: (1) Accord's generic offering infringed a valid patent, so Defendants' scheme did not unlawfully prevent generic entry; and (2) it was Handa/Par's failure to obtain FDA approval, not its settlement with AstraZeneca, that prevented Handa/Par's generic entry.  MTD at 7-8.  Both arguments improperly rely on facts outside of the SCAC and contest the SCAC's well-plead allegations, rendering the issue unsuitable for resolution here, where the Court must accept EPPs' allegations as true and

resolve them in the light most favorable to EPPs. *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc*., 140 F.3d 478, 483 (3d Cir. 1998). These arguments can be rejected on this basis alone.

Furthermore, Accord did not need to win its patent litigation with AstraZeneca in order to enter the market with an FDA-approved generic prior to the agreed-upon launch date. SCAC ¶¶24, 187 (identifying three theories of generic entry). EPPs plausibly allege that Accord would have obtained a license to the '437 patent (just as it actually did) and that without reverse payments, Handa/Par and Accord launch dates, and AstraZeneca's subsequent AG launch would all be earlier. SCAC ¶¶135-187.

Further, EPPs allege that although Handa/Par received tentative approval (*i.e.*, their ANDAs were ready for final approval but for a patent or regulatory exclusivity)—as a result of Defendants' pay-for-delay agreement—Handa/Par had no incentive to obtain final approval prior to its agreed-upon entry date. SCAC ¶156-163. The most probable inference to be drawn from this is not that Handa/Par was incapable of obtaining ANDA approval earlier, but that Handa/Par geared their resources towards final approval in May 2017, 180 days after Par/Handa's launch of product supplied by AstraZeneca. *Id*.

EPPs have plausibly alleged antitrust injury. Defendants cannot prematurely dispose of EPPs' claims by offering their own competing version of events.

8

## IV.    EPPS HAVE ARTICLE III STANDING

Defendants concede EPPs have Article III standing to pursue claims under the laws of those states where they puchased Seroquel XR.  Nonetheless, Defendants erroneously contend EPPs lack "standing" to pursue claims under the laws of states in which no named plaintiff made purchases.  MTD at 8-10.  Defendants' argument conflates the requirements of Article III standing and class certification under Rule 23, is contrary to Third Circuit precedent, and has been rejected by *every* Circuit Court to address this issue.

"Article III [standing] requires that federal courts may only adjudicate an actual 'case or controversy.'" *In re Prudential Ins. Co Am. Sales Practice Litig.*, 148 F.3d 283, 306 (3d Cir. 1998).  "[W]hether an action presents a 'case or controversy' is determined vis-à-vis the named parties." *Id.*  Here, the named EPPs satisfy the Article III case and controversy requirement: they each allege purchases of Seroquel XR at supracompetitive prices resulting from Defendants' anticompetitive conduct and seek damages to redress their injuries.  Under Third Circuit law, nothing more is required: "[o]nce threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court, and there remains no further separate class standing requirement in the constitutional sense." *Id.* at 306-07.

Defendants attempt to graft an erroneous requirement onto the Article III analysis: that named plaintiffs demonstrate "standing" to pursue claims on behalf of absent class members under the parallel laws of other states where the named plaintiffs made no purchases.  This is illogical.  The named plaintiffs do not seek to recover under the statutes of those states where they did not make purchases.  Rather, they seek to represent absent class members who made purchases in other states under parallel state laws, which caused the same injury (overcharges) and emanated from the same conduct and defendants.  It makes little sense to evaluate whether the named plaintiffs have "standing" under the laws of states where they seek to represent absent class members at this stage.  The question of whether they can represent absent class members in other states is not a question of Article III standing – the Third Circuit has made clear there is no "class standing" requirement[7] – but of satisfying the requirements of Rule 23 at class certification.  Every Circuit Court to have considered this issue has reached the same conclusion.  *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 95 (2d Cir. 2018) ("[C]onsidering variation[] in state law[] as [a] question[] of predominance under Rule 23(b)(3), rather than standing under Article III, makes sense [because] … it acknowledges the obvious

---

[7] *See Prudential*, 148 F.3d at 306-07; *see also Lewis v. Casey*, 518 U.S. 343, 395 (1996) (Souter, J., concurring) ("Whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions.").

truth that class actions necessarily involve plaintiffs litigating injuries that they themselves would not have standing to litigate."); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018) ("Our conclusion is in line with our prior precedent. . .requir[ing] only that a plaintiff make a single purchase in order to satisfy standing for a claim brought under multiple state laws."); *Morrison v. YTD International, Inc.*, 649 F.3d 533, 535-36 (7th Cir. 2011).  Other courts have as well.[8]

Defendants base their Article III standing argument principally on *Niaspan* and *Wellbutrin*.  Both cases are at odds with the majority of cases in this Circuit and cannot be reconciled with Third Circuit precedent, particularly *Prudential*.  The courts in *Generics, Liquid Aluminum, Remicade, Thalomid, Miller, Eggs and Chocolate* each determined—consistent with Third Circuit and Supreme Court precedent—that once a named plaintiff establishes injury-in-fact, they have Article III standing and whether they can represent absent class members from other states should be reserved for class certification.[9] This Court should reach the same result.

---

[8] *See, e.g.*, *In re Broiler Chicken*, 2017 WL 5574376, at *24 (N.D. Ill. Nov. 20, 2017); *Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp.*, 221 F. Supp. 3d 227, 236 (D.R.I. 2016); *Auto Parts III*, 50 F. Supp. 3d at 884; *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 213 (S.D.N.Y. 2012).

[9] *In re Generic Pricing Antitrust Litig.* ("*Generics*"), 368 F. Supp. 3d 814, 827-31 (E.D. Pa. 2017) (Defendants' "cannot overcome the Third Circuit's holding that so long as one named plaintiff has established Article III standing, unidentified members of the class will not block class standing on a motion to dismiss"); *accord In re Remicade Antitrust Litig.*, 345 F. Supp. 3d 566, 585 (E.D. Pa. 2018); *In re Liquid Aluminum Sulfate Antitrust Litig.*, 2017 WL 3131977, *19 (D.N.J. July 20,

## V.     EPPS' STATE ANTITRUST CLAIMS ARE WELL-PLED

EPPs have properly alleged claims under the Florida, Illinois, Maryland, Massachusetts and Utah antitrust statutes.

**Florida (Counts II and III)**: EPPs are pursuing claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), *not* the Florida Antitrust Act. FDUPTA does "not have the same indirect purchaser restriction as the state's antitrust law."[10] Defendants have not identified a single case where a court has failed to uphold EPP antitrust claims under FDUTPA.  *See Mack v. Bristol-Myers Squibb Co.*, 673 So.2d 100, 110 (Fla. 2d DCA 1996); *Generics*, 368 F. Supp. 3d at 841; *In re Suboxone*, 64 F. Supp. 3d 665, 699 n.23 (E.D. Pa. 2014).

**Illinois (Counts I-III)**: The statutory language Defendants contend prohibits EPPs from pursuing their claim as a class action only prohibits class actions ***in Illinois state court***: "no person other than the [Attorney General of this State] shall

---

2017); *Miller v. Samsung Elecs.*, 2015 WL 3965608, at *3 (D.N.J. June 29, 2015); *In re Thalomid & Revlimid Antitrust Litig.*, 2015 WL 9589217, at *19 (D.N.J. Oct. 29, 2015); *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 886-87 (E.D. Pa. 2012); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 579-80 (M.D. Pa. 2009). Thus, the weight of authority in the Third Circuit holds that once named plaintiffs establish Article III standing, Rule 23 determines whether they can represent absent class members in other states.

[10] Defendants erroneously contend that *Broiler Chicken* supports their position. It does not: "*Illinois Brick* is not a sufficient basis to dismiss Plaintiffs' FDUTPA claim."  290 F. Supp. 3d 772, 820; *accord In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 160-62.

be authorized to maintain a class action *in any court of this State* for indirect purchasers asserting claims under this Act." 740 Ill. Comp. Stat. § 10/7(2) (emphasis added). Pursuant to this express statutory language, and applying the Supreme Court's decision in *Shady Grove Orthopedic v. Allstate Ins.*, 559 U.S. 393 (2010), courts have held that the procedural limitations applicable in state court do not trump Rule 23, which authorizes class claims to proceed in *federal* court. *Broiler Chicken*, 290 F. Supp. 3d at 817-18; *Liquid Aluminum*, 2017 WL 3131977, at *18-19.

**Maryland (Counts I-III)**: The City of Baltimore is a named plaintiff here and has had the authority to pursue claims on behalf of EPPs in Maryland at all relevant times under the applicable Maryland statute. Md. Code Com. Law § 11-209(b)(1) (political subdivision has standing). This alone is sufficient to allow EPPs to pursue Maryland claims.

The Maryland statute was expanded in October 2017 to allow any EPP to pursue such claims. The amended statute, Md. Code Com. Law § 11-209(b)(2), is remedial in nature, and therefore applies retroactively. *Landsman v. Maryland Home Improvement Com'n*, 839 A.2d 743, 749 (Md. Ct. Spec. App. 2003). The amendment provides an independent basis to uphold EPPs' Maryland claims.[11]

---

[11] Even if not applied retroactively, this would only affect the amount of damages, not the viability of the claim. *Packaged Seafood*, 2019 WL 3429174, at *24.

13

**Massachusetts (Count III)**: EPPs may bring claims under Mass. Gen. Laws ch. 93A because the statute explicitly prohibits unlawful methods of competition and contains an FTC Act harmonization provision. *In re Flonase*, 692 F. Supp. 2d 524, 545 (E.D. Pa 2010); *In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30, 44 (D.D.C 2003) ("indirect purchasers can assert claims for price-fixing or other anticompetitive conduct under 93A § 9"); *Generics*, 368 F. Supp. 3d at 842.[12]

**Utah (Counts I-III)**: There is no statutory requirement that the named plaintiffs be citizens or residents of Utah. "[A]llegations that 'members of the putative class presumably include Utah citizens and residents' are sufficient to overcome a motion to dismiss indirect purchaser claims under the Utah Antitrust Act when said allegations assert that said 'members of the putative classes made purchases in Utah.'" *Liquid Aluminum*, 2017 WL 3131977, at *28; *Generics*, 368 F. Supp. 3d at 838-39. EPPs make these allegations. SCAC ¶¶243, 257, 274.

**EPPs Sufficiently Allege Intrastate Effects:** Alleging a "nationwide antitrust violation that increased prices paid by EPPs in each state" is sufficient to establish interstate effects and courts "reject[] [] arguments [sic] that state law antitrust claims should be dismissed because the relevant state laws 'target only

---

[12] Defendants misrepresent *Ciardi v. Hoffman-La Roche*. The Massachusetts Supreme Court held plaintiff could proceed under 93A because "the language of [93A] [i]s a clear statement of legislative policy to protect Massachusetts consumers through the authorization of such indirect purchaser actions." 762 N.E.2d 303, 314 (Mass. 2002).

anticompetitive conduct that occurs solely or predominantly within the borders of the state . . . .'". *Generics*, 368 F. Supp. 3d at 837-38 (citing *In re Solodyn Antitrust Litig.*, 2015 WL 5458570, at *16).  EPPs have made such allegations, satisfying the requirements of the statutes of New York, Mississippi, Tennessee, and Wisconsin. SCAC ¶¶218-220, 243, 257, 274.

## VI.   EPPS' CONSUMER PROTECTION CLAIMS ARE PERMISSIBLE

Defendants ignore the well-pled allegations in the SCAC demonstrating that Defendants engaged in unfair, deceptive and unconscionable conduct to allocate the market for Seroquel XR, depriving EPPs of the benefit of competition and lower prices.  SCAC ¶¶125-217.  Such allegations are sufficient under state consumer protection acts.  *Generics*, 368 F. Supp. 3d at 840.

### A.   EPPs' CONSUMER PROTECTION CLAIMS SATISFY RULE 8(A)

EPPs do not *merely* cite statutes to support their consumer protection claims, as Defendants suggest.  It is sufficient to incorporate by reference facts cited in the complaint in order to satisfy each state consumer protection law even if state statutes vary.  *Generics*, 368 F. Supp. 3d at 840; *King Drug Co. of Florence v. Cephalon, Inc.*, 702 F. Supp. 2d 514, 515 (E.D. Pa. 2010) (end-payors sufficiently state claims under state statutes where claims "incorporate by reference the entire complaint"); *Sergeants Benevolent Association Health & Welfare Fund v. Actavis*, 2018 WL 7197233, at *34-35 (accord).

*Avenarius v. Eaton Corp.*, is inapplicable.  There, unlike here, plaintiffs failed to include allegations necessary to plead consumer protection claims in their complaint.  898 F. Supp. 2d 729 at n12 (D. Del. 2012) ("The introductory facts section. . .does not discuss these facts which evidently would be relevant or critical to state-based consumer protection claims.").

### B.   EPPs' Consumer Protection Claims Are Valid

Defendants' list of purported state-specific deficiencies misconstrues the law.

**Illinois:**  Defendants argue for dismissal under the Illinois *Consumer Fraud and Deceptive Business Practices Act* ("ICFDBPA") by claiming EPPs cannot bring an antitrust claim under the Illinois *Antitrust* Act.  MTD at 15-16.  As discussed above, EPPs can bring claims under the Illinois Antitrust Act.  *Supra*, Part III(A); *See also Sergeants Benevolent*, 2018 WL 7197233, at *42 (denying to dismiss ICFDBPA claim).

**New York:**  EPPs adequately plead deception by alleging that Defendants engaged in anticompetitive conduct to delay entry of generic Seroquel XR, thereby artificially inflating pricing paid by EPPs.  *Loestrin 24*, 410 F. Supp. 3d 352, 380 ("The Court joins the majority of courts in concluding that it is sufficient, under the consumer protection laws of…New York, to allege that a defendant's anticompetitive conduct. . . caused end-payor plaintiffs to pay overcharges in the

form of higher prices for brand drugs.") (collecting cases); *Effexor*, 337 F. Supp. 3d 466.

Defendants argue EPPs are not consumers.  MTD at 16-18.  The "consumer-oriented" requirement for claims under the New York consumer protection law (and others) is construed liberally and permits actions that cause any consumer injury or harm to the public interest.  *In re Intel Corp Microprocessor Antitrust Litigation*, 496 F. Supp. 2d 404, 417 (D. Del. 2007) (allegations that suppression of competition led to higher prices is sufficient to state claim under NY Consumer Protection Laws).

**Minnesota:**  If EPPs are required to plead deceptive conduct under the Minnesota Consumer Protection law, they have done so, as detailed above regarding New York.  *Suboxone*, 64 F. Supp. 3d 665; *accord Generics*, 368 F. Supp. 3d 814.

**Massachusetts**:  Defendants argue that under the Massachusetts Consumer Protection Act ("MCPA"), EPPs are *business* entities, not *consumers*.  MTD at 17.  But EPPs are *consumers* because they participate in consumer transactions by paying or reimbursing overcharges.  EPPs are not businesses under the MCPA.  EPPs do not purchase drugs for resale, distribute products or act as intermediaries in the distribution chain (as businesses would).  *In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 81-82 (D. Mass. 2007) (EPPs can bring claims under Section 9 of the MCPA because they "were not motivated by the desire to make money" in the transactions).

**Missouri**:  Defendants contend that under Missouri law, purchases must be for "personal, family[,] or household purposes."  MTD at 18.  EPP class includes individual consumers as well as end-payors, who participate in consumer transactions by paying some or all of the prices charged to individual consumers. *Generics*, 368 F. Supp. 3d at 847 (upholding Missouri consumer protection claims).

**Nevada**:  Nevada's Deceptive Practices Act provides that "[a]n action may be brought by *any person* who is a victim of consumer fraud."  Nev. Rev. Stat. § 41.600(1) (emphasis added).  Defendants cite Nev. Rev. Stat. § 598.0977, which creates *additional* remedies for elderly and disabled persons.  It does not abrogate the right of action provided to *all* injured persons by § 41.600.  *Suboxone*, 64 F. Supp. 3d 665.[13]

**North Carolina:**  Plaintiffs allege that Defendants' anticompetitive conduct had substantial effects in North Carolina because competition was suppressed, the prices were elevated, and class members made purchases at supracompetitive prices. SCAC ¶34.  Such allegations satisfy the "intrastate" pleading requirements under this statute.  *Flonase*, 692 F. Supp. 2d at 537; *Effexor*, 337 F. Supp. 3d 435.

## VII.  EPPS' UNJUST ENRICHMENT CLAIMS ARE PROPERLY PLEAD

Courts routinely allow plaintiffs to proceed with unjust enrichment claims in reverse payment cases, recognizing that in all states, the focus is whether Defendants

---

[13] *Wellbutrin*, 260 F.R.D. at 163-64, did not consider § 41.600.

received a benefit (profits) resulting from unlawful overcharges for the brand drug to the detriment of EPPs and it would be inequitable and unjust to allow Defendants to retain their ill-gotten gains. *Generics*, 368 F.3d, at 850-851; *Loestrin*, 261 F. Supp. 3d at 359-61; *K-Dur*, 338 F. Supp. 2d at 544; *Lorazepam*, 295 F. Supp. 2d, at 50.

Defendants cite *Wellbutrin*, which held that there was no unjust enrichment claim under federal common law. This is irrelevant because EPPs only bring state unjust enrichment claims.

### A.   *ILLINOIS BRICK* DOES NOT PRECLUDE PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT

Defendants mistakenly argue that because EPPs cannot bring statutory antitrust claims in states without repealer statutes, EPPs also cannot bring unjust enrichment claims. MTD at 19-20. "No reason or logic supports a conclusion that a state's adherence to the rule of *Illinois Brick* dispossesses a person not only of a statutory legal remedy for an antitrust violation, but also dispossesses the same person of his right to pursue a common law equitable remedy." *Generics*, 368 F. Supp. 3d at 850 (collecting cases). Moreover, it is premature to consider individual state requirements for unjust enrichment at this stage, which are more appropriately addressed at class certification. *Id* at 850; *Thalomid*, 2015 WL 9589217, at *21 & n.8; *Loestrin*, 261 F. Supp. 3d at 359-61.

**B.   EPPs' Unjust Enrichment Claims Are Properly Pled In The Alternative**

EPPs appropriately plead unjust enrichment in the alternative in states where EPPs have also plead antitrust and consumer protection claims, a practice routinely accepted by courts in this district.  *See e.g.*, *Generics*, 368 F. Supp. 3d at 850.

**C.   Defendants' "Direct Benefit" And "Laches" Arguments Fail**

Defendants argue that EPPs' unjust enrichment claims in the states of Georgia, Kentucky, and Pennsylvania fail because they do not confer a *direct* benefit on Defendants by virtue of their status as end-payors.   Direct contact between a plaintiff and defendant is not required in order for the plaintiff to confer a direct benefit.  *Generics*, 368 F. Supp. 3d at 851; *accord K-Dur*, 338 F. Supp. 2d at 851 ("[T]he mere fact that there has been no direct contact between a defendant and the plaintiff does not preclude a finding that the defendant received a direct benefit from that plaintiff.").   *Generics*, 368 F.Supp.3d 814, 851 (E.D. Pa. 2019).   EPPs' allegations of "losses from purchasing . . . drugs at inflated prices" "connected to benefits incurred by Defendants who allegedly conspired to raise the prices of those drugs" are sufficient.  *Id.*[14]

---

[14] Georgia, Kentucky, and Pennsylvania courts agree that plaintiffs need not directly confer a benefit on defendants or make direct payments to bring a claim for unjust enrichment. *Bolinger v. First Multiple Listing Serv.*, 838 F. Supp. 2d 1340, 1366 n.27 (N.D. Ga. 2012); *Seye v. Cmty. Yellow Cab*, 2013 WL 1332430 (E.D. Ky. Feb. 25, 2013); *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006).

EPPs' West Virginia claim is timely.  Defendants have suffered no prejudice requiring dismissal due to laches.  Regardless, this argument is inappropriate at the motion to dismiss stage.  *Needham v. Cruver*, 19 Del. J. Corp. L. 383, 393 (Del. Ch. 1993).

## VIII.  CONCLUSION

For these reasons, the Court should deny Defendants' motion.

Dated: February 10, 2021

*/s/ Michael J. Barry*
Michael J. Barry (DE Bar #4368)
**GRANT & EISENHOFER P.A.**
123 Justison Street, Suite 601
Wilmington, DE 19801
Phone: 302-622-7000

Robert G. Eisler
Deborah A. Elman
Chad B. Holtzman (*Pro Hac Vice* forthcoming)
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, NY
Telephone: (646) 722-8500
Facsimile: (646) 722-8501
reisler@gelaw.com
delman@gelaw.com
choltzman@gelaw.com

*Counsel for Plaintiff Law Enforcement Health Benefit and the Proposed End-Payor Class Interim Co-Lead Counsel*

Sharon K. Robertson

---

Defendants misconstrue *Pixler v. Huff*, where the court's focus was not whether plaintiff conferred a benefit *directly* or *indirectly* on a defendant, but whether plaintiff conferred a benefit on defendant *at all*.  2011 WL 5597327, at *12 (W.D. Ky. Nov. 17, 2011).

Donna M. Evans (*Pro Hac Vice* forthcoming)
**COHEN MILSTEIN SELLERS**
   **& TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
srobertson@cohenmilstein.com
devans@cohenmilstein.com

*Counsel for the Mayor and City Council of
Baltimore and the Proposed Class
Intertim Co-Lead Counsel*

Jayne A, Goldstein
Natalie Finkelman Bennett
**SHEPHERD, FINKELMAN, MILLER**
   **& SHAH, LLP**
35 East State St.
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (866) 300-7367
jgoldstein@sfmslaw.com
nfinkelman@sfmslaw.com

*Counsel for Plaintiff Fraternal Order of Police,
Miami Lodge 20, Insurance Trust Fund and the
Proposed End-Payor Class
Interim Co-Lead Counsel*

Archana Tamoshunas
**TAUS, CEBULASH & LANDAU, LLP**
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: (212) 931-0704
Telephone: (646) 873-7651 (direct)
atamoshunas@tcllaw.com

*Additional Counsel for the Mayor and City
Council of Baltimore and the Proposed Class*

Jane Lewis
**CITY OF BALTIMORE DEPARTMENT
OF LAW**
City Hall, Room 109
100 N. Holiday Street
Baltimore, MD 21202
Telephone: (443) 388-2190
Andre.Davis@baltimorecity.gov
Suzanne.Sangree2@baltimorecity.gov

*Additional Counsel for Plaintiff the Mayor and
City Council of Baltimore*

Laurie Rubinow (Bar No:  5170014)
**SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP**
52 Duane Street,
New York, NY 10007
Telephone: (860) 526-1100
Facsimile: (866) 300-7367
lrubinow@sfmslaw.com

*Additional Counsel for Plaintiff Fraternal
Order of Police, Miami Lodge 20, Insurance
Trust Fund and the Proposed End-Payor Class*

Frank R. Schirripa, Esq.
David R. Cheverie, Esq.
Daniel B. Rehns, Esq.
**HACH ROSE SCHIRRIPA &
CHEVERIE LLP**
112 Madison Avenue, 10th Floor
New York, NY 10016
Telephone: (212) 213-8311
Facsimile: (212) 779-0028
fschirripa@hrsclaw.com
dcheverie@hrsclaw.com
drehns@hrsclaw.com

*Counsel for Plaintiff the Welfare Plan of the
International Union of Operating Engineers*

23

*Locals 137, 137A, 137B, 137C, and 137R and the Proposed End-Payor Class*

Thomas H. Burt
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653
burt@whafh.com

Heidi M. Silton
Karen Hanson Riebel
Jessica N. Servais
Kailey C. Mrosak
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave. S., Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
hmsilton@locklaw.com
khriebel@locklaw.com
jnservais@locklaw.com
kcmrosak@locklaw.com

Kenneth A. Wexler
Justin N. Boley
**WEXLER WALLACE LLP**
55 W. Monroe, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
kaw@wexlerwallace.com
jnb@wexlerwallace.com

*Counsel for Pipe Trades Services MN Welfare Fund and the Proposed End-Payor Class*

Elizabeth Metcalf
Peter Safirstein

24

**SAFIRSTEIN METCALF LLP**
The Empire State Building
350 Fifth Avenue, Suite 5960
New York, New York 10118
Telephone: (212) 201-2845
EMetcalf@SafirsteinMetcalf.com
PSafirstein@SafirsteinMetcalf.com

*Counsel for Plaintiff Sergeants Benevolent*
*Association Health & Welfare Fund and the*
*Proposed End-Payor Class*

Lee Albert
Brian Brooks
230 Park Avenue, Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lalbert@glancylaw.com
bbrooks@glancylaw.com

*Counsel for The Uniformed Firefighters'*
*Association of Greater New York Security*
*Benefit Fund and the Retired Firefighters'*
*Security Benefit Fund of the Uniformed*
*Firefighters for the Uniform Firefighters'*
*Association*