IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Seroquel XR (Extended Release Quetiapine Fumarate) Antitrust Litigation | |
| | Master Docket No. 20-1076-CFC |
| This Document Relates to: | |
| All Actions | |

### ORDER

Pending before me is Defendants' *Daubert* Motion No. 2 to Exclude the "Gelling Agent" and Raman Spectroscopy Opinions of Dr. Joseph Fix. D.I. 637. I write for the parties and incorporate by reference the background and the applicable legal standards set forth in my Memorandum Order issued on March 20, 2025 (D.I. 837).

Defendants seek by their motion to "exclude the infringement opinions of Dr. Joseph Fix, *i.e.*, ¶¶ 160-285 of his Opening Report and ¶¶ 17-103 of his Reply Report, for being based on an incorrect claim construction." D.I. 637. In the alternative, Defendants seek to "exclude at least [Dr. Fix's] opinions related to Raman spectroscopy, *i.e.*, ¶ 163 & n.12 of his Opening Report and ¶¶ 50(d) and 54(b) of his Reply Report, for lack of relevant experience or expertise." D.I. 637.

I.

The opinions of Dr. Fix that Defendants seek to exclude relate to the issue of Handa's chances of prevailing on infringement in the underlying patent case. As that case approached trial, the dispositive infringement issue was whether hydrogenated vegetable oil (HVO), as used in Handa's product, acted as "a gelling agent." *See* D.I. 653-1 at 254. The district court construed "a gelling agent" to be "any substance which forms a gel when in contact with water." D.I. 640-1 at 4. Handa argued that HVO was not a gelling agent because it is hydrophobic and thus does not hydrate and swell in the presence of water to form a gel. *See* D.I. 640-1 at 37–38.

In his report for this case, Dr. Fix opines that Handa was likely to prevail on infringement in the underlying case. D.I. 640-1 at 66. Defendants argue that "Dr. Fix failed to apply the claim construction ordered in the underlying case" and that therefore "his opinions related to infringement should be excluded." D.I. 638 at 1. Dr. Fix insists that he did apply the court's claim construction in forming his opinions, D.I. 706-7 ¶¶ 61, 140, but Defendants say that Dr. Fix's representation to that effect "is belied by [his] admission that under the claim construction he applied, he would not consider ethylcellulose—one of the exemplar gelling agents included in definitional language from the [asserted patent's written description]

2

that the Court adopted in its claim construction—to be a gelling agent." D.I. 638 at 1–2.

The fallacy of Defendants' argument is that ethylcellulose was not part of the district court's claim construction. Although a paragraph in the asserted patent's written description defined the term "gelling agent" to "include[] such substances as hydroxypropyl methylcellulose, . . . ethylcellulose, . . . polyvinylpyrrolidone, . . . and the like, or mixtures thereof," D.I. 640-1 at 9, the court did not adopt that definition in its claim construction. D.I. 640-1 at 4. Thus, Dr. Fix's "admission" that he would not consider ethylcellulose to fall within the patent court's claim construction is of no moment and in no way "belie[s]" his assertion that he relied on the court's construction of "gelling agent."

Defendants say that the "District Court's rejection of the construction proposed by another generic company litigating in consolidated proceedings in the underlying case" "le[aves] no room for doubt" that the district court relied on the patent's definitional language when construing "gelling agent." D.I. 638 at 6. Defendants are correct that the court relied in part on the written description's definitional language in rejecting the proposal of another generic manufacturer to construe "gelling agent" as excluding polyvinylpyrrolidone in certain concentrations. D.I. 640-1 at 5. But relying on such language is one thing; importing language into a construction of a term is a completely different thing. As noted

3

above, the court did not import into its construction of "a gelling agent" anything about ethylcellulose.

## II.

In the alternative, Defendants argue that I should exclude Dr. Fix's opinions related to Raman spectroscopy—one of the techniques used to analyze infringement in the underlying case. D.I. 771 at 5. In Defendants' words, Dr. Fix's Raman spectroscopy opinions should be excluded because at his deposition, Dr. Fix "repeatedly conceded that he is only 'vaguely familiar' with Raman spectroscopy, has 'not used Raman spectroscopy [him]self' and is 'not an expert in Raman spectroscopy,' which he described as 'very, very technical—there's probably not many people who can explain it.'" D.I. 638 at 9 (alteration in the original) (citations omitted). Defendants say that in light of "his conceded lack of expertise, Dr. Fix should not be permitted to testify regarding Raman spectroscopy testing." D.I. 638 at 9.

Plaintiffs counter that "[t]he totality of Dr. Fix's [deposition] testimony," including testimony in which he "explained the purpose of Raman spectroscopy and how the testing is performed" and "what the images produced by Raman spectroscopy would and would not show," "demonstrates [that] he possesses the necessary qualifications to analyze the results of Raman spectroscopy testing." D.I. 704 at 19–20.

4

Having read the transcript of Dr. Fix's deposition, I have concerns about whether he is qualified to testify about Raman spectroscopy. In light of those concerns, I will have Dr. Fix testify about his relevant experience and expertise at trial outside the presence of the jury before making a determination about whether he will be permitted to offer testimony related to Raman spectroscopy. *See* 29 Fed. Prac. & Proc. Evid. § 6264.3 (2d ed.) (explaining that a court may "hear qualification evidence before permitting the witness to give opinion testimony" and that such a hearing "may take place either in the presence or absence of the jury, at the discretion of the court").

NOW THEREFORE, at Wilmington on this Twenty-seventh day of March in 2025, it is HEREBY ORDERED that Defendants' *Daubert* Motion No. 2 to Exclude the "Gelling Agent" and Raman Spectroscopy Opinions of Dr. Joseph Fix (D.I. 637) is DENIED IN PART and DEFERRED IN PART.

_____<br>CHIEF JUDGE

5