## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: Seroquel XR (Extended Release Quetiapine Fumarate) Antitrust Litig. | Master Dkt. No. 20-1076-CFC |
| This Document Relates To: All Direct Purchaser Class Actions | |

**BRIEF IN SUPPORT OF DIRECT PURCHASER CLASS PLAINTIFFS'
UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED SETTLEMENTS,
APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS
AND PROPOSED SCHEDULE FOR A FAIRNESS HEARING**

OF COUNSEL:

Bruce E. Gerstein (*pro hac vice*)
Jonathan Gerstein (*pro hac vice*)
David B. Rochelson (*pro hac vice*)
GARWIN GERSTEIN &
FISHER LLP
88 Pine Street, Suite 2810
New York, NY 10005
(212) 398-0055
bgerstein@garwingerstein.com
jgerstein@garwingerstein.com
drochelson@garwingerstein.com

*Lead Counsel for the Direct
Purchaser Class and Counsel for
Smith Drug Company*

DATED: May 29, 2025

COOCH AND TAYLOR, P.A.
Carmella P. Keener (DE # 2810)
The Brandywine Building
1000 N. West Street, Suite 1500
P.O. Box 1680
Wilmington, DE 19899-1680
(302) 984-3816
ckeener@coochtaylor.com

*Counsel for Smith Drug Company and
the Direct Purchaser Class*

David F. Sorensen (*pro hac vice*)
Caitlin G. Coslett (*pro hac vice*)
Andrew C. Curley (*pro hac vice*)
Julia R. McGrath (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000
dsorensen@bm.net
ccoslett@bm.net
acurley@bm.net
jmcgrath@bm.net

Peter Kohn (*pro hac vice*)
Neill Clark (*pro hac vice*)
FARUQI & FARUQI LLP
1617 JFK Blvd, Suite 1550
Philadelphia, PA 19103
(215) 277-5770
pkohn@faruqilaw.com
nclark@faruqilaw.com

Russell Chorush (*pro hac vice*)
Christopher M. First (*pro hac vice*)
Kyle S. Ruvolo (*pro hac vice*)
HEIM PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, TX 77002
(713) 221-2000
rchorush@hpcllp.com
cfirst@hpcllp.com
kruvolo@hpcllp.com

Stuart E. Des Roches (*pro hac vice*)
Dan Chiorean (*pro hac vice*)
Thomas Maas (*pro hac vice*)
ODOM & DES ROCHES LLC
650 Poydras Street, Suite 2020
New Orleans, LA 70130
(504) 522-0077
stuart@odrlaw.com
dchiorean@odrlaw.com
tmaas@odrlaw.com

Susan Segura (*pro hac vice*)
David C. Raphael (*pro hac vice*)
Erin R. Leger (*pro hac vice*)
SMITH SEGURA RAPHAEL &
LEGER LLP
221 Ansley Blvd
Alexandria, LA 71303
(318) 445-4480
ssegura@ssrllp.com
draphael@ssrllp.com
eleger@ssrllp.com

*Additional Counsel for Smith Drug Company
and the Direct Purchaser Class*

Dianne M. Nast (*pro hac vice*)
Joseph N. Roda (*pro hac vice*)
Michael D. Ford (*pro hac vice*)
NastLaw LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
(215) 923-9300
dnast@nastlaw.com
jnroda@nastlaw.com
mford@nastlaw.com

Michael L. Roberts (*pro hac vice*)
Karen S. Halbert (*pro hac vice*)
Stephanie E. Smith (*pro hac vice*)
Sarah E. DeLoach (*pro hac vice*)
Roberts Law Firm US, PC
20 Rahling Circle
Little Rock, AR 72223
(501) 821-5575
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us
stephaniesmith@robertslawfirm.us
sarahdeloach@robertslawfirm.us

*Counsel for KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc.
and the Direct Purchaser Class*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ...................................................................................2

BACKGROUND ....................................................................................3

    A.    Procedural Background .......................................................3

    B.    The Proposed Settlements ...................................................6

ARGUMENT .......................................................................................7

    A.    The Proposed Settlements Meet the Standard for Preliminary Approval. ......................................................7

    B.    The Proposed Form and Manner of Notice Are Appropriate.....................................................................17

    C.    RG/2 Is an Appropriate Claims Administrator. ...................20

    D.    Huntington National Bank Is an Appropriate Escrow Agent. ............................................................................21

    E.    The Proposed Schedule Is Fair and Should Be Approved. ................21

CONCLUSION .....................................................................................22

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Caddick v. Tasty Baking Co.*,
  2021 WL 1374607 (E.D. Pa. Apr. 12, 2021) ...............................................9, 11, 12

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ...........................................................................................5, 6

*Easterday v. USPack Logistics LLC*,
  2023 WL 4398491 (D.N.J. July 6, 2023) ..............................................................8

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) ..................................................................................7

*FTC v. Actavis, Inc.*,
  570 U.S. 136 (2013) ...........................................................................................3, 4

*Gordon v. Vanda Pharms. Inc.*,
  2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ....................................................14

*Hacker v. Elec. Last Mile Sols. Inc.*,
  2024 WL 5102696 (D.N.J. Nov. 6, 2024) ...........................................................13

*In re Auto. Refinishing Paint Antitrust Litig.*,
  2004 WL 1068807 (E.D. Pa. May 11, 2004) .......................................................20

*In re Effexor XR Antitrust Litig.*,
  3:11-cv-5479, D.I. 729-3, 746, 809 (D.N.J.) .................................................16, 19

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ....................................................................................7

*In re Generic Pharm. Pricing Antitrust Litig.*,
  No. 16-MD-2724, D.I. 3129 (E.D. Pa. Mar. 9, 2023) .........................................16

*In re K–Dur Antitrust Litigation*,
  2017 WL 3124429 (D.N.J. May 23, 2017) ..........................................................22

*In re Lipitor Antitrust Litig.*,
  3:12-cv-2389, D.I. 1363-7, 1374, 1424 (D.N.J.) .....................................16, 19, 22

*In re Provigil Antitrust Litig.*,
   No. 06-1797, D.I. 864-17, 870 (E.D. Pa. Oct. 15, 2015) ....................................16

*In re Remicade Antitrust Litig.*,
   2022 WL 3042766 (E.D. Pa. Aug. 2, 2022) ..........................................7, 8, 15, 21

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
   2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ................................................. *passim*

*In re Tricor Direct Purchaser Antitrust Litig.*,
   No. 1:05-00340, D.I. 536-1, 543 (D. Del.) ..........................................................16

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
   2021 WL 358611 (D.N.J. Feb. 1, 2021) ..............................................................16

*In re Wawa, Inc. Data Sec. Litig.*,
   2021 WL 3276148 (E.D. Pa. July 30, 2021) ........................................................15

*King Drug Co. of Florence, Inc. v. Cephalon, Inc. ("Provigil")*,
   2015 WL 12843830 (E.D. Pa. Oct. 15, 2015) ...........................................9, 11, 12

*McRobie v. Credit Prot. Ass'n*,
   2020 WL 6822970 (E.D. Pa. Nov. 20, 2020) ..........................................10, 12, 14

*Powell v. Subaru of Am., Inc.*,
   2024 WL 4381832 (D.N.J. Oct. 3, 2024) .............................................................20

*Sheinberg v. Sorensen*,
   2016 WL 3381242 (D.N.J. June 14, 2016) ...........................................................11

*Sullivan v. D.B. Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ................................................................................15

*Sweda v. Univ. of Penn.*,
   2021 WL 2665722 (E.D. Pa. June 29, 2021) .......................................................20

*Vinh Du v. Blackford*,
   2018 WL 6604484 (D. Del. Dec. 17, 2018) ........................................................10

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*,
   2020 WL 5211035 (E.D. Pa. Sept. 1, 2020) ........................................................19

## Other Authorities

28 U.S.C. §1715 ...........................................................................................22

Fed. R. Civ. P. 23 ..............................................................................9, 17

Manual For Complex Litigation (4th ed. 2005)...................................17, 19

4 Newberg on Class Actions (4th ed. 2002) .............................................16

7 Newberg on Class Actions (5th ed. 2020) .............................................14

J M Smith Corporation, d/b/a Smith Drug Company, and KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc. (collectively the "Direct Purchaser Plaintiffs," "DPPs" or "Class Representatives"), on behalf of the Direct Purchaser Class (the "Class"),[1] have reached agreements with (a) AstraZeneca Pharmaceuticals LP and AstraZeneca UK Limited (together, "AstraZeneca") and (b) Handa Pharmaceuticals, LLC ("Handa" and, with AstraZeneca, the "Settling Defendants")[2] to resolve the Class's claims in this litigation. Class Representatives and the Class (together, the "Direct Purchaser Class Plaintiffs") respectfully submit this Brief in Support of their Motion for Preliminary Approval of Proposed Settlements, Approval of the Form and Manner of Notice to the Class and

---

[1] The Court previously certified the following class:

> All persons or entities in the United States, including its territories, possessions, and the Commonwealth of Puerto Rico, who purchased 50mg, 150mg, 200mg, and/or 300mg strength of brand or generic Seroquel XR directly from any of the Defendants at any time from August 2, 2015 until April 30, 2017 (the "Class Period").

> Excluded from the Class are Defendants and their officers, directors, management and employees, predecessors, subsidiaries and affiliates, and all federal governmental entities.

D.I. 582 ¶1. Also excluded from the Class for purposes of the Settlement Agreements are the following entities that previously opted out of the Class: Walgreen Co., The Kroger Co., Albertsons Companies, Inc., H-E-B, L.P., Hy-Vee, Inc., CVS Pharmacy, Inc., Rite Aid Corp., and Rite Aid Hdqtrs. Corp (the "Retailer Plaintiffs").

[2] Par Pharmaceutical, Inc. ("Par" and, with the Settling Defendants, "Defendants") was previously a defendant. Par filed for bankruptcy and claims against it have been discharged. D.I. 187, 662.

Proposed Schedule for a Fairness Hearing.

## **INTRODUCTION**

Under settlement agreements executed just days before a jury trial was set to begin, AstraZeneca and Handa have or are set to make cash payments totaling $51,419,000[3] into escrow for the benefit of the Class in exchange for dismissal of the litigation with prejudice and certain releases. The Settlements represent an outstanding result for DPPs and the Class and preliminary approval is appropriate.

The Settlements follow nearly six years of intense litigation and full development of the record and occurred on the eve of trial. The proposed cash Settlements are in the best interests of the Class, since, if finally approved, the Settlements assure that Class members will receive substantial cash payments while avoiding the inherent risks of trial and potential appeal. The Handa Settlement, reached before the Settlement with AstraZeneca, also provided for substantial cooperation, including by making Handa's CEO available to testify at trial. For these reasons, and as detailed below, the Settlements satisfy the requirements for preliminary approval. Accordingly, DPPs ask the Court to enter the proposed Order providing for:

---

[3] Exs. 1 (the "AstraZeneca Settlement") and 2 (the "Handa Settlement" and, with the AstraZeneca Settlement, the "Settlement Agreements" or the "Settlements"). Exhibits are appended to the Declaration of Jonathan Gerstein filed herewith.

1.    Preliminary approval of the Settlement Agreements and related documents, including the proposed notice (Ex. 4, the "Notice") and claim form (Ex. 5, the "Claim Form");

2.    A proposed plan of allocation (Ex. 6, the "Allocation Plan");

3.    Appointment of RG/2 Claims Administration LLC ("RG/2") as "Claims Administrator";

4.    Appointment of The Huntington National Bank as "Escrow Agent" for the settlement funds; and

5.    A proposed settlement schedule, including scheduling the Fairness Hearing.

## BACKGROUND

### A.    Procedural Background

On August 2, 2019, DPPs filed the first antitrust lawsuit challenging Defendants' conduct regarding the prescription drug Seroquel XR.[4] DPPs alleged that AstraZeneca and Handa unlawfully delayed the availability of less expensive, generic versions of Seroquel XR through unlawful "reverse payments." *See FTC v. Actavis, Inc.*, 570 U.S. 136 (2013). DPPs developed the case based on an extensive private investigation, and without the benefit of any investigation or action by government antitrust enforcers. Shortly after DPPs filed, other plaintiffs filed substantially similar complaints.

DPPs' case was transferred to this Court in August 2020.[5] The Court appointed Garwin Gerstein & Fisher LLP ("GGF" or "Lead Class Counsel") and,

---

[4] *J. M. Smith Corp., et al., v. AstraZeneca Pharms. L.P., et al.*, No. 19-cv-7233 (S.D.N.Y.).

[5] No. 20-cv-1076 (D. Del.), D.I. 91.

3

with the other counsel listed below, "Class Counsel") as Interim Lead Class Counsel for the proposed class of direct purchasers,[6] ordered all direct purchaser class actions consolidated,[7] and ordered coordination of the DPP action with actions by the Retailer Plaintiffs and End-Payor Plaintiffs.[8] DPPs filed the operative Consolidated Amended Class Action Complaint on December 16, 2020.[9] On January 11, 2021, Defendants moved to dismiss the complaint.[10] On July 5, 2022, this Court denied that motion in part.[11]

The parties then engaged in extensive discovery. Plaintiffs secured the production of over 2 million pages of documents and 4 million lines of data from Defendants and third parties and took and defended more than 30 fact and expert depositions. The parties also exchanged 24 expert reports.[12]

On September 20, 2023, DPPs moved to certify the Class.[13] On February 6, 2024, the Court granted the motion and appointed GGF as lead counsel for the

---

[6] D.I. 128.

[7] D.I. 134.

[8] *Id.*

[9] D.I. 135.

[10] D.I. 138.

[11] D.I. 177, 178.

[12] The numbers in this paragraph do not include discovery produced by End-Payor Plaintiffs or Retailer Plaintiffs.

[13] D.I. 509.

Class pursuant to Rule 23(g).[14] On April 5, 2024, the Court approved the form and manner of notice to the Class and appointed RG/2 as the Notice Administrator.[15] RG/2 mailed to all Class members via first-class mail a Notice informing them about the litigation, that the Class had been certified and that members could opt out.[16] Only Retailer Plaintiffs opted out.[17]

On June 13, 2024, Settling Defendants moved for summary judgment and filed motions to exclude five of DPPs' experts' opinions pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), which involved extensive briefing and argument.[18] Plaintiffs also filed two *Daubert* motions against Settling Defendants' experts.[19] On February 6, 2025, the parties argued the pending motions. In March and April 2025, the Court denied Settling Defendants' motion for summary judgment, substantially denied Settling Defendants' *Daubert* challenges, and granted in part one of Plaintiffs' *Daubert* challenges.[20]

In the months preceding the May 5 trial date, the parties prepared for trial by exchanging witness lists, exhibit lists, deposition designations, jury instructions,

---

[14] D.I. 582.

[15] D.I. 608.

[16] D.I. 663.

[17] *Id.* ¶¶6-7.

[18] D.I. 626, 634, 638, 644, 647, 650, 838, 839, 865, 867, 879, 880, 886.

[19] D.I. 652, 655.

[20] D.I. 837, 844, 855-57, 859-61.

verdict forms, *voir dire* and jury questionnaires (and objections to same), and eleven motions *in limine*. The parties submitted a proposed joint pretrial order.[21]

On April 24, 2025, at the pre-trial conference, DPPs and Handa informed the Court that they had reached an agreement in principle. They executed that agreement on April 28.[22]

On May 1, four days before trial, DPPs and AstraZeneca informed the Court that they had reached an agreement in principle. They executed that agreement on May 19.[23]

## B.    The Proposed Settlements

Under the Settlement Agreements, AstraZeneca will pay $50,925,000 in cash[24] and Handa has paid $494,000 in cash,[25] in both cases for the benefit of all Class members. Handa represented to DPPs that it is financially incapable of paying more, and provided documentation and a sworn declaration to that effect. Handa also committed to provide material, substantial cooperation to DPPs, including by providing sworn statements and making Handa's CEO available to testify at trial.[26] Under each Settlement Agreement, the respective Settling

---

[21] D.I. 875.

[22] Ex. 2.

[23] Ex. 1.

[24] Ex. 1.

[25] Ex. 2.

[26] *Id.* ¶35.

Defendant will receive dismissal of the litigation with prejudice and certain releases.

According to DPPs' proposed Notice and Notice Plan (*see infra* §B), Direct Purchaser Plaintiffs will inform Class members of the procedures by which they may: (a) receive their share of Settlement funds; (b) object to the proposed Settlement Agreements; and/or (c) object to Class Counsel's application for attorneys' fees, reimbursement of reasonable expenses, and service awards to the Class Representatives.[27]

## **ARGUMENT**

### A.    **The Proposed Settlements Meet the Standard for Preliminary Approval.**

The Third Circuit recognizes that "a strong public policy exists, which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010). *See also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (similar).

Preliminary approval is "at most a determination that there is what might be termed probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness . . . [*i.e.*,] that there are no obvious deficiencies and the settlement falls within the range of reason." *In re Remicade Antitrust Litig.*,

---

[27] Ex. 4.

2022 WL 3042766, at *10 (E.D. Pa. Aug. 2, 2022) (cleaned up, citations omitted). "Preliminary approval of a proposed class action settlement is left to the discretion of the trial court and is based on an examination of whether the proposed settlement is 'likely' to be approved under Rule 23(e)(2)." *Id.* There must be "a conceivable basis for presuming that the standard applied for final approval— fairness, adequacy, and reasonableness—will be satisfied." *Easterday v. USPack Logistics LLC*, 2023 WL 4398491, at *5 (D.N.J. July 6, 2023). Under Rule 23(e)(2), the court considers whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*Id.* Here, consideration of these factors supports preliminary approval.[28]

### 1.   Rule 23(e)(2)(A): Class Representatives and Class Counsel Have Adequately Represented the Class.

In evaluating a proposed Settlement, this factor focuses on "the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2) 2018 Adv. Comm. Note. Courts recognize that counsel with experience in similar cases, who are familiar with the facts of this case, are best positioned to produce a settlement that is in the best interests of the class. *See In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2024 WL 815503, at *6 (E.D. Pa. Feb. 27, 2024) (granting final approval of settlement where "the parties engaged in sufficient discovery, which took place over the course of approximately ten years and involved the review and analysis of thousands of documents and deposition transcript pages"); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.* ("*Provigil*"), 2015 WL 12843830, at *2 (E.D. Pa. Oct. 15, 2015) (finding that counsel in "highly complex antitrust case" held "an adequate appreciation of the merits of the case" after having "vigorously litigated" the case for many years, and with case "poised for trial"); *Caddick v. Tasty Baking Co.*, 2021 WL 1374607, at *6 (E.D. Pa. Apr. 12, 2021) (finding this factor satisfied where "class counsel expended considerable time and effort … [and] engaged in

---

[28] While a preliminary approval hearing is not required, Lead Class Counsel will be available for such a hearing at the Court's convenience.

extensive discovery," enabling counsel to "fully evaluate[] the strengths and weaknesses of the claims and defenses before reaching the … settlement").

Here, Lead Class Counsel are highly experienced in pharmaceutical antitrust litigation. *See* D.I. 544-10 at 140. Lead Class Counsel reached the proposed Settlements on the eve of trial, after years of hard-fought litigation and development of a voluminous record that included millions of pages of documents and dozens of depositions, and after the Court had resolved all pre-trial motions. By bringing the case all the way to the eve of trial, Lead Class Counsel were fully aware of the case's strengths and weaknesses, allowing them to assess the merits of the litigation before engaging in the negotiations that led to the Settlements.

Class Representatives adequately represented the interests of the Class, including by producing documents and data and sitting for depositions, and were prepared to testify at trial. This factor will likely be satisfied for final approval and thus weighs in favor of preliminary approval.

### 2. Rule 23(e)(2)(B): Counsel Negotiated the Settlements at Arm's Length.

Settlements negotiated at arm's length are presumed fair. *Vinh Du v. Blackford*, 2018 WL 6604484, at *5-6 (D. Del. Dec. 17, 2018); *see also McRobie v. Credit Prot. Ass'n*, 2020 WL 6822970, at *4 (E.D. Pa. Nov. 20, 2020) ("[T]he negotiations that led to the Settlement Agreement here were conducted by counsel who by all accounts had equal bargaining power …. [T]his action was litigated

aggressively and over an extended period of time. Counsel on both sides are experienced and highly regarded attorneys."). Here, the parties engaged in arm's length settlement negotiations that were detailed, time-consuming and hard-fought. Class Counsel and Settling Defendants' counsel vigorously advocated for their respective clients and were prepared to proceed to trial absent the Settlements. This factor will likely be satisfied for final approval and thus weighs in favor of preliminary approval.

### 3. Rule 23(e)(2)(C): The Relief Provided to the Class is Adequate.

As noted above, Lead Class Counsel have extensive experience litigating antitrust claims, and have vigorously prosecuted this case. Their experienced and well-informed opinion that the Settlements reflect a fair, reasonable and adequate recovery for the Class "is entitled to considerable weight." *Sheinberg v. Sorensen*, 2016 WL 3381242, at *9 (D.N.J. June 14, 2016).

Each of the four Rule 23(e)(2)(C) factors will likely be satisfied for final approval, and thus weighs in favor of preliminary approval.

***The Costs, Risks and Delay of Trial and Appeal***. "This factor balances the 'relief that the settlement is expected to provide to class members' against 'the costs and risk involved in pursuing a litigated outcome." *Caddick*, 2021 WL 1374607, at *6 (quoting 2018 Adv. Comm. Notes to Rule 23); *see also Provigil*, 2015 WL 12843830, at *3 (noting risks of continued litigation). Here, DPPs would

have presented a strong case at trial, but as in any case, faced a serious risk of recovering nothing at all, or that any recovery would be delayed by post-trial motions or appeal. In contrast, the proposed settlements afford Class members "immediate relief without the delay, risk and uncertainty of continued litigation." *Provigil*, 2015 WL 12843830, at *3.

***The Effectiveness of the Proposed Method of Distributing Settlement Proceeds to the Class.*** Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" but is not "unduly demanding." *Caddick*, 2021 WL 1374607, at *6 (quoting 2018 Adv. Comm. Notes). Here, the proposed Notice and Notice Plan ensure that Class members are provided all relevant information concerning, *inter alia*, the terms of the proposed settlements, the process for filing a claim, and the opportunity to object. *See infra* §B; *McRobie*, 2020 WL 6822970 at *5 (notice by mail and claims website satisfied this factor).

The claims process will facilitate legitimate claims and defeat unjustified claims but will not be unduly demanding. As detailed in the declaration of DPPs' expert economist, Dr. Russell Lamb, DPPs' proposed Allocation Plan will distribute settlement proceeds on a *pro rata* basis, *i.e.*, in proportion to each Class member's purchases of brand and generic Seroquel XR. Allocation Plan ¶2; Ex. 7 ("Lamb Allocation Decl.") ¶5. Dr. Lamb, Class Counsel and the Claims

Administrator will send each Class member a pre-populated Claim Form, listing their (a) net brand Seroquel XR 50mg, 150mg, 200mg, and/or 300mg direct purchases from AstraZeneca from August 2, 2015 through December 31, 2018; and (b) net generic Seroquel XR 50mg, 150mg, 200mg, and/or 300mg direct purchases from Par for the period from November 1, 2016 through April 30, 2017. Allocation Plan ¶1; Lamb Allocation Decl. ¶7. Claimants will have the option to verify the pre-populated numbers or submit data to support a different calculation. Allocation Plan ¶1.1; Lamb Allocation Decl. ¶8. To the extent submissions from individual Claimants differ from transaction data provided by AstraZeneca or Par, Dr. Lamb will review the available data and documentation and confer with the Claims Administrator and Lead Class Counsel in order to finalize the calculations. Allocation Plan ¶4.1; Lamb Allocation Decl. ¶8. This *pro rata* "method for distributing settlement proceeds is effective." *Hacker v. Elec. Last Mile Sols. Inc.*, 2024 WL 5102696, at *10 (D.N.J. Nov. 6, 2024).

**The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment.** Under the proposed schedule below, Class Counsel will apply for an award of attorneys' fees and reimbursement of litigation expenses sufficiently in advance (two weeks) of the deadline for Class members to object. *See infra* §E. If any Class members do so object, the Court may consider Class Counsel's application and any objections thereto in determining whether to grant final

13

approval. *See McRobie*, 2020 WL 6822970 at *5 (deferring a finding as to this factor because counsel's fee request was forthcoming). Accordingly, this factor does not weigh against preliminary approval.

    ***Any Agreements Made in Connection with the Proposed Settlement.*** The proposed Settlements represent the full agreements of the parties, with one caveat noted explicitly in the AstraZeneca Agreement: AstraZeneca may rescind the Settlement in the event that the Court permits Class members a second opt-out period—no such period is necessary, as explained below; *see infra* §B.3—and certain entities opt out of the Class. Ex. 1 ¶42. The details are set forth in the Confidential Supplemental Agreement which the parties have agreed, "[w]ith leave of Court … shall not be filed on the docket and, if ordered to be filed, the Parties jointly shall request that it be filed under seal." *Id.*; *see* Rule 23 Adv. Comm. Notes (2003) (requiring only that parties identify any such agreement, and court "may" direct disclosure of the terms); 7 Newberg on Class Actions § 22:59 (5th ed. 2020) (in context of such agreements, "parties attempt to keep the precise level at which the exit is authorized private so as not to encourage opt outs") (citation omitted); *Gordon v. Vanda Pharms. Inc.*, 2022 WL 4296092, at *5 (E.D.N.Y. Sept. 15, 2022) (permitting filing of supplemental agreement under seal). There are no other material terms in the Confidential Supplemental Agreement. No other agreements were made in connection with the proposed Settlements.

In sum, the Rule 23(e)(2)(C) factor will likely be satisfied for final approval and thus weighs in favor of preliminarily approving the Settlement.

### 4.     Rule 23(e)(2)(D): The Allocation Plan Treats All Class Members Equitably Relative to Each Other.

The proposed Allocation Plan treats Class members equitably by distributing settlement proceeds on a *pro rata* basis.

"When assessing proposed plans of allocation, courts consider whether the proposed plan is 'fair, reasonable, and adequate.'" *Remicade*, 2022 WL 3042766 at *11 (citations omitted). "A district court's principal obligation in approving a plan of allocation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *In re Wawa, Inc. Data Sec. Litig.*, 2021 WL 3276148, at *13 (E.D. Pa. July 30, 2021) (cleaned up and citations omitted). Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Sullivan v. D.B. Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) (upholding approval of *pro rata* allocation plan). Courts routinely approve similar allocation plans in pharmaceutical antitrust actions like this one.[29]

---

[29] *See, e.g.*, *Suboxone*, 2024 WL 815503, at *12 ("[T]he proposed Plan of Allocation is fair, reasonable, and adequate as it provides a straightforward method for determining each Class Member's pro rata share of the Net Settlement Fund based upon purchases...."); *In re Lipitor Antitrust Litig.*, 3:12-cv-2389 (D.N.J.), D.I. 1363-3, 1424 (same); *In re Effexor XR Antitrust Litig.*, 3:11-cv-5479 (D.N.J.), D.I. 729-3, 746 (same); *In re Provigil Antitrust Litig.*, No. 06-1797 (E.D. Pa.), D.I. 864-17, 870, (Oct. 15, 2015) (same); *In re Generic Pharm. Pricing Antitrust Litig.*,

The proposed Allocation Plan satisfies this standard. It provides that the Net Settlement Fund will be distributed to Class members on a *pro rata* basis, calculated from each Claimant's weighted combined net purchases of brand and generic Seroquel XR 50mg, 150mg, 200mg, and/or 300mg tablets purchased directly from AstraZeneca or Par. *See* Allocation Plan ¶¶1-2; Lamb Allocation Decl. ¶5.

Endorsement of the plan of allocation by experienced counsel and a qualified expert weigh in favor of approval. *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 358611, at *3 (D.N.J. Feb. 1, 2021) ("In determining whether a [p]lan of [a]llocation is fair, reasonable, and adequate, courts give great weight to the opinion of qualified counsel.") (citation omitted). Class Counsel and Dr. Lamb endorse the Allocation Plan. Dr. Lamb explains in his declaration that the proposed Allocation Plan is fair and reasonable because it "reflects the type and approximate extent of [each Class member's] injury as alleged (according to my prior overcharge calculations) and does not systematically favor recovery (relative to actual overcharges) on the part of potential Claimants who purchased brand

---

No. 16-MD-2724 (E.D. Pa.), D.I. 3129 (Mar. 9, 2023) (same); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 1:05-00340 (D. Del.), D.I. 536-1, 543 (same); *see generally* 4 Conte & Newberg, Newberg on Class Actions, §12.35, at 350 (4th ed. 2002) (*pro rata* allocation "is the most common type of apportionment of lump sum settlement proceeds for a class of purchasers" and "has been accepted and used … in many antitrust class actions").

Seroquel XR or generic Seroquel XR." Lamb Allocation Decl. ¶9. The proposed

Allocation Plan is similar to the plan that Dr. Lamb developed in *Suboxone*,

another direct purchaser class case (*see id.* ¶6), which received court approval.

2024 WL 815503, at *11.

This factor will likely be satisfied for final approval and thus weighs in favor

of preliminary approval.

**B.    The Proposed Form and Manner of Notice Are Appropriate.**

**1.    Form of Notice**

Under Rule 23(e), Class members are entitled to reasonable notice of a

proposed settlement before it is finally approved by the Court, and to notice of the

final Fairness Hearing.[30] For Rule 23(b)(3) classes such as the Class, the court

must "direct to class members the best notice that is practicable under the

circumstances, including individual notice to all members who can be identified

through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). There are two components

of notice: (1) the form of the notice; and (2) the manner in which notice is sent to

class members.

The proposed Notice (*see* Ex. 4) is based on the notice previously approved

by this Court advising Class members of the pendency of the litigation, that the

Class had been certified, of Class members' opt-out rights, and of the deadline to

---

[30] *See* Manual For Complex Litigation, §§21.312, 21.633 (4th ed. 2005)
("Manual").

do so. D.I. 608.[31] The Notice is designed to alert Class members to the proposed Settlements by using a bold headline, and the plain language text provides important information regarding the significant terms, including:

- the total amount Settling Defendants have agreed to pay;

- the process for obtaining Settlement proceeds;

- that a Class member may object to the proposed Settlements and the process and deadline for doing so, including entering an appearance through an attorney if desired;

- the schedule for completing the Settlements' approval process, including the submission of the motion for final approval;

- Class Counsel's forthcoming request for attorneys' fees, reimbursement of reasonable expenses, and service awards to the Class Representatives, and the process for objecting to same; and

- the binding effect of a final judgment on members of the Class.

In addition, the Notice prominently features contact information for Lead Class Counsel and the Claims Administrator, as well as directions to the website where the Settlement documents, proposed Allocation Plan, and supplemental information will be provided. As noted above, each Class member will also receive, contemporaneously with their notice, a pre-populated Claim Form (*see* Ex. 5) that will be due 45 days from the Notice Date (defined below).

---

[31] A single process for approval and notice of both the AstraZeneca and Handa Settlements will promote judicial economy and avoid unnecessary expense and confusion.

### 2.    Manner of Notice (the "Notice Plan")

DPPs propose to send notice by first-class mail to each Class member, all of which are business entities. The list of Class members was drawn from Defendants' transactional sales data and/or is otherwise known to Class Counsel and the Claims Administrator. The Claims Administrator will use the same mailing addresses that it used for the previous Class notice. In circumstances like this, where all class members can be identified, the best method of notice is individual notice. *See* Manual, §21.311 at 488 ("Rule 23(c)(2)(B) requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort."). For this reason, courts—including this Court—routinely find such notice to be sufficient. *See, e.g.*, D.I. 608 ¶¶2-3 (approving notice to DPP Class); D.I. 817 ¶¶20-23 (approving notice to End-Payor Class); *Suboxone*, 2024 WL 815503, at *10 (same); *Lipitor*, 3:12-cv-2389 (D.N.J.), D.I. 1363-7 at 44, 1374 (same); *Effexor*, 3:11-cv-5479 (D.N.J.), D.I. 809 ¶20 (same).

### 3.    An Additional Opt-Out Period Is Unnecessary.

As all Class members have already been afforded the opportunity to request exclusion from the Class, "[d]ue process does not require a second opt-out period." *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2020 WL 5211035, at *13 (E.D. Pa. Sept. 1, 2020) (citation omitted); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, at *3 (E.D. Pa. May 11, 2004) (similar). "[B]ecause the

prior notice of class certification provided an opt-out period … there is no need for an additional opt-out period." *Suboxone*, 13-md-2445 (E.D. Pa.), D.I. 984 ¶6.

Here, all Class members (all of which are business entities) received the Court-approved notice following class certification, and thus received a prior opportunity to opt out of the certified Class. No Class member requested exclusion other than certain Retailer Plaintiffs—which litigated the case alongside Direct Purchaser Class Plaintiffs and settled separately with Settling Defendants; the Retailer Plaintiffs' purchases are not included in the Class Settlements. D.I. 663. Although Class members will not receive a second opportunity to opt out, each will be provided the opportunity to object to the terms of the Settlements and/or Class Counsel's request for attorneys' fees, expenses and service awards to the Class Representatives.[32]

## C.    RG/2 Is an Appropriate Claims Administrator.

The Court previously appointed RG/2 as the Notice Administrator. D.I. 608 ¶1. DPPs request that RG/2 now be reappointed as the Claims Administrator. RG/2 ably served as the Notice Administrator in this case and has capably administered settlement funds in similar classes of direct purchasers of

---

[32] As for objections, "though the Court does not yet have information regarding potential objections … preliminary approval is appropriate because the putative class members will have the opportunity to object." *Powell v. Subaru of Am., Inc.*, 2024 WL 4381832, at *8 (D.N.J. Oct. 3, 2024); *see also Sweda v. Univ. of Penn.*, 2021 WL 2665722, at *8 (E.D. Pa. June 29, 2021) (similar).

pharmaceutical drugs. *See* D.I. 595 at 8-9 (detailing RG/2's qualifications). If so appointed, RG/2 will oversee the administration of the settlement, including disseminating notice to the Class, calculating each Class member's *pro rata* share of the Net Settlement Fund in conjunction with Dr. Lamb and Class Counsel, and distributing Settlement proceeds.

**D.    Huntington National Bank Is an Appropriate Escrow Agent.**

DPPs request that The Huntington National Bank serve as Escrow Agent, pursuant to the escrow agreement filed herewith. Ex. 8. Courts, including this Court, have repeatedly found Huntington Bank to be an appropriate escrow agent. *See, e.g.*, D.I. 817 ¶19; *Remicade*, 2022 WL 3042766, at *3.

**E.    The Proposed Schedule Is Fair and Should Be Approved.**

DPPs propose the following schedule for the settlement approval process:

- Within 14 days from the date of preliminary approval, the Claims Administrator will mail notice and a pre-populated Claim Form to each member of the Class and Class Counsel will post the Settlements to its website (the "Notice Date");

- No later than 14 days before the Objection Deadline (defined below), Class Counsel will file all briefs and materials in support of the application for attorneys' fees, expenses and service awards;

- Within 45 days from the Notice Date, Class members may object to the settlement and/or attorneys' fees, expenses and service awards (the "Objection Deadline");

- Within 45 days from the Notice Date, Class members must return the executed Claim Form;

- No later than 21 days after the Objection Deadline, Class Counsel will file all briefs and materials in support of final approval of the settlement; and

- On a date to be set by the Court, the Court will hold the final Fairness Hearing.[33]

This schedule is fair because Class members will have 45 days to consider the Notice and two weeks to consider Class Counsel's request for fees, expenses and service awards before the Objection Deadline. In addition, federal and state officials have 90 days after receiving CAFA notices to advise the Court of their view (if any). Similar schedules have been approved by courts in similar cases.[34]

## **CONCLUSION**

For the foregoing reasons, Direct Purchaser Plaintiffs respectfully request that the Court enter the proposed Order.

---

[33] A court may not finally approve a proposed settlement until 90 days from service of the CAFA notices. 28 U.S.C. §1715(d). However, the Fairness Hearing may be held sooner.

[34] *See, e.g.*, *Lipitor*, 3:12-cv-2389 (D.N.J.), D.I. 1374 (March 8, 2024) ¶¶11, 15-18 (objections 45 days after notice, fee brief 14 days before objections, final approval brief 21 days after objections); *K-Dur*, 2017 WL 3124429, at *2 (D.N.J. May 23, 2017) (objections 60 days after notice, fee brief 21 days before objections, final approval brief 14 days after objections).

DATED: May 29, 2025

OF COUNSEL:

Bruce E. Gerstein (*pro hac vice*)
Jonathan Gerstein (*pro hac vice*)
David B. Rochelson (*pro hac vice*)
GARWIN GERSTEIN &
FISHER LLP
88 Pine Street, Suite 2810
New York, NY 10005
(212) 398-0055
bgerstein@garwingerstein.com
jgerstein@garwingerstein.com
drochelson@garwingerstein.com

*Lead Counsel for the Direct
Purchaser Class and Counsel for
Smith Drug Company*

David F. Sorensen (*pro hac vice*)
Caitlin G. Coslett (*pro hac vice*)
Andrew C. Curley (*pro hac vice*)
Julia R. McGrath (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000
dsorensen@bm.net
ccoslett@bm.net
acurley@bm.net
jmcgrath@bm.net

Respectfully submitted,

COOCH AND TAYLOR, P.A.

/s/ Carmella P. Keener
Carmella P. Keener (DE # 2810)
The Brandywine Building
1000 N. West Street, Suite 1500
P.O. Box 1680
Wilmington, DE 19899-1680
(302) 984-3816
ckeener@coochtaylor.com

*Counsel for Smith Drug Company and
the Direct Purchaser Class*

Peter Kohn (*pro hac vice*)
Neill Clark (*pro hac vice*)
FARUQI & FARUQI LLP
1617 JFK Blvd, Suite 1550
Philadelphia, PA 19103
(215) 277-5770
pkohn@faruqilaw.com
nclark@faruqilaw.com

Russell Chorush (*pro hac vice*)
Christopher M. First (*pro hac vice*)
Kyle S. Ruvolo (*pro hac vice*)
HEIM PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, TX 77002
(713) 221-2000
rchorush@hpcllp.com
cfirst@hpcllp.com
kruvolo@hpcllp.com

Susan Segura (*pro hac vice*)
David C. Raphael (*pro hac vice*)
Erin R. Leger (*pro hac vice*)
SMITH SEGURA RAPHAEL &
LEGER LLP
221 Ansley Blvd
Alexandria, LA 71303
(318) 445-4480
ssegura@ssrllp.com
draphael@ssrllp.com
eleger@ssrllp.com

Stuart E. Des Roches (*pro hac vice*)
Dan Chiorean (*pro hac vice*)
Thomas Maas (*pro hac vice*)
ODOM & DES ROCHES LLC
650 Poydras Street, Suite 2020
New Orleans, LA 70130
(504) 522-0077
stuart@odrlaw.com
dchiorean@odrlaw.com
tmaas@odrlaw.com

*Additional Counsel for Smith Drug Company*
*and the Direct Purchaser Class*

Dianne M. Nast (*pro hac vice*)
Joseph N. Roda (*pro hac vice*)
Michael D. Ford (*pro hac vice*)
NastLaw LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
(215) 923-9300
dnast@nastlaw.com
jnroda@nastlaw.com
mford@nastlaw.com

Michael L. Roberts (*pro hac vice*)
Karen S. Halbert (*pro hac vice*)
Stephanie E. Smith (*pro hac vice*)
Sarah E. DeLoach (*pro hac vice*)
Roberts Law Firm US, PC
20 Rahling Circle
Little Rock, AR 72223
(501) 821-5575
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us
stephaniesmith@robertslawfirm.us
sarahdeloach@robertslawfirm.us

*Counsel for KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc.*
*and the Direct Purchaser Class*

24